# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DEJARIO L. KING, :

    Plaintiff, :

vs. : CA 18-0446-MU

ANDREW M. SAUL, :
Commissioner of Social Security,[1]
     :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Dejario L. King brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 19 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the May 20, 2019 hearing

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

(Continued)

before the undersigned, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

## I. Procedural Background

Plaintiff protectively filed applications for a period of disability and disability insurance benefits, as well as for supplemental security income benefits, on or about June 17, 2016, alleging disability beginning on October 28, 2015. (*See* Tr. 190-99.) King's claims were initially denied on August 26, 2016 (Tr. 107-11) and, following Plaintiff's September 12, 2016 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 114-15), a hearing was conducted before an ALJ on December 20, 2017 (Tr. 36-53). On May 15, 2018, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to benefits. (Tr. 10-22.) More specifically, the ALJ determined that King retains the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), with certain identified mental limitations, and can perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 15 & 21-22 *with* Tr. 50 & 51). And, ultimately, the Appeals Council denied Plaintiff's request for review on August 28, 2018 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 19 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

Plaintiff alleges disability due to sarcoidosis, fibromyalgia, degenerative joint disease, obesity, affective disorder, and anxiety disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3. The claimant has the following severe impairments: sarcoidosis, fibromyalgia, degenerative joint disease, obesity, affective disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to simple routine tasks; simple work-related decisions; occasional interaction with supervisors, coworkers and the public; and gradual changes in a routine work setting.**
>
> . . .
>
> **6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**
>
> . . .
>
> **7. The claimant was born on May 1, 1974, and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**
>
> **8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**
>
> **9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"**

**whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

. . .

**11. The claimant has not been under a disability, as defined in the Social Security Act, from October 28, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 13, 15, 21 & 22 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians;

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

(3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot perform her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can those perform those sedentary jobs identified by the VE during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded,

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, King asserts but one reason the Commissioner's decision denying her benefits is in error (*i.e.,* not supported by substantial evidence), namely, the ALJ's RFC determination is not supported by substantial evidence. In particular, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ gave little weight to the opinions of consultative examiner Dr. Stephen Chromiak and treating physician Dr. Eyston Hunte, physicians who actually physically examined her and, instead, the ALJ "cherry picked" from the medical evidence to develop an RFC assessment.

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to

6

conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also Davison, supra,* 370 Fed.Appx. at 996 ("An ALJ makes an RFC determination by considering the claimant's ability to sit, stand, walk, lift, carry, push, pull, stoop, crouch, and reach."); 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The

7

ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ linked her RFC assessment—that is, sedentary work with some mental limitations—to specific evidence in the record bearing upon King's ability to perform the physical, mental, sensory and other requirements of work. (*Compare* Tr. 15-21 *with generally* Tr. 317-25, 333-38, 352-82, 386-91 & 399-467.) In particular, even though the Plaintiff argues that the ALJ erred in failing to accord appropriate weight to the opinions of her treating physician, Dr. Eyston Hunte, and consultative examiner Dr. Stephen Chromiak, and, instead, improperly cherry-picked from the evidence of record to "reach" her RFC assessment, this Court does not agree and finds the ALJ's RFC assessment supported by substantial evidence.

Before addressing the Plaintiff's specific arguments, the undersigned notes that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Sec. Admin.,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). Indeed, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15,

9

2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 591 (11th Cir. May 2, 2006) (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

Dr. Eyston Hunte, a physician who has treated King since November 15, 2010 (*see* Tr. 415), completed a Physical Capacities Evaluation form on November 21, 2016 on which he indicated that Plaintiff can sit for 4 hours at one time and for a total of 4 hours during an 8-hour workday, can stand/walk a total of 1 hour at a time and 1 hour total during an 8-hour workday, can lift a total of 5 pounds for 4 hours during an 8-hour workday and carry 5 pounds for 2 hours out of an 8-hour workday, etc. (Tr. 416). In addition, Dr. Hunte also noted that King suffers from back and knee pain and that these symptoms increase with physical activity (such as walking, standing, bending, stooping, etc.) to such an extent that bed rest is necessary. (Tr. 415). Some three months earlier, on August 19, 2016, King was examined by Dr. Stephen Chromiak, who opined that King "is so dependent for ADL's & IADL's that she *appears* unable to work in any capacity." (Tr. 390 (emphasis supplied)). Dr. Chromiak's examination findings included the following: observations that King drug her left foot when taking a few steps in the exam room and

10

exhibited a need to steady herself to avoid losing her balance; a decrease in light touch sensation below the left ankle and continuing into the left foot to the tips of the toes; c-spine spasm; a decrease in motor strength due to pain, etc. (Tr. 388-89.)

The ALJ accorded little weight to Dr. Hunte's medical source statements and the findings of Dr. Chromiak (Tr. 19-20).

> The undersigned gives little weight to the findings from Dr. Chromiak. His findings are significantly at variance with findings from other sources, including treating sources that were generated about the same time. Specifically, Dr. Chromiak described cervical spasm, loss of balance, decreased sensation, loss of motor strength due to pain, positive straight leg raise testing, pain on range of motion of the left ankle with all movements, limitation to walking a few steps with a cane, inability to squat, and inability to walk on the heels or toes. In contrast, primary care records reflect findings mostly limited to tenderness with intermittent left ankle swelling noted to be related to cellulitis, while subsequent orthopedic records indicate that the claimant was treated for Achilles tendinitis with a recommendation for physical medicine and rehabilitation to assist with stretching, due to muscle tightness. It is also noted that Dr. Davis evaluated the claimant just a few days after Dr. Chromiak and stated that she was walking with a cane, although it appeared unused.
>
> Little weight is given to Dr. Hunte's medical source statements, which are not well supported by his own findings or other substantial evidence. The majority of Dr. Hunte's examinations were described as normal or were limited to findings of tenderness with ankle swelling related to cellulitis or other acute abnormalities. Dr. Hunte noted in March 2016 that he would be reducing the claimant's medications and discussed treating pain with non-steroidal anti-inflammatory drugs (NSAIDs) rather than narcotics. He referred the claimant for pain management. In March 2017, Dr. Hunte declined to continue prescribing Xanax or Valium despite the claimant's complaint that she needed Xanax and was unable to get it, displaying tremors and shaking on examination on that one occasion.

(*Id.* (internal citations omitted)).

The Court begins its analysis by observing that the ALJ's finding that Dr. Hunte's medical source statements are "not well supported by his own findings or other substantial evidence" (Tr. 20), if accurate, constitutes a valid reason (or reasons) for failing to accord

11

those statements more than little weight. *See Gilabert, supra,* 396 Fed.Appx. at 655 (recognizing that good cause for rejecting a treating physician's opinion include that the opinion is inconsistent with the doctor's own medical records, the opinion is not bolstered by the evidence, and that the evidence supports a contrary finding). In this case, the undersigned disagrees with Plaintiff's view of the evidence and finds that the ALJ's decision to accord Dr. Hunte's medical source statements little weight is supported by substantial evidence of record. First, Dr. Hunte's own treatment records and objective findings do not support the limitations reflected on the November 21, 2016 PCE form or his comment about Plaintiff's pain,[6] those records reflecting the following: (1) on examination on November 2, 2015, November 4, 2015, December 2, 2015, and March 24, 2016, other than noting no obvious swelling in the lower extremities and that King was in no acute distress, Dr. Hunte's examination records contain no objective findings whatsoever relative to Plaintiff's extremities, joints, neck or back (*see* Tr. 370-76); (2) on examination on June 2, 2016, Plaintiff reported severe pain in the Achilles tendon and Dr. Hunte did note severe tenderness over the left Achilles and calcaneus (Tr. 368); (3) on June 14, 2016, Plaintiff informed Dr. Hunte that she needed a cane to get around because of pain in her ankle and back and the treating physician did prescribe a cane on her request, though noting only tenderness to palpation over the lower lumbar area but no findings respecting her ankle and noting Plaintiff was in no acute distress (Tr. 366-67); (4) on July 12, 2016, though Plaintiff complained of pain all over, Dr. Hunte's examination

---

[6] The undersigned would note that Dr. Hunte's pain comment is not at all contrary to the ALJ's RFC assessment inasmuch as the treating physician simply noted that King's pain is increased by such physical activities as walking and standing but did not indicate that her pain is impacted by sitting. (*See* Tr. 415.)

12

notes merely reflect tender knees and ankles, with an abscess (with cellulitis) on the left ankle, but otherwise a woman in no acute distress (Tr. 364); (5) on August 16, 2016, Plaintiff again complained of pain all over but Hunte's notes simply reflect no fatigue or malaise, no obvious swelling in the lower extremities, and a woman in no acute distress, but no objective findings whatsoever relative to Plaintiff's extremities, joints, neck or back (Tr. 413); (6) on September 29, 2016, King complained of her joints locking and hurting in the shoulders and knees, Hunte noting that she was walking with a cane and had diffuse tenderness in the upper back and legs but was in no acute distress and, again, had no obvious swelling in the legs, no fatigue and no malaise (Tr. 411); (7) on November 21, 2016, the same date that Hunte completed the PCE and pain questionnaire, the treating physician's notes indicate complaints of knee and ankle pain but there is no reference to Plaintiff walking with a cane and the notes are devoid of any specific objective findings relative to King's extremities, joints, neck or back (Tr. 421; *see also id.* (Hunte's note indicate Plaintiff was in no acute distress, there was no obvious swelling of the legs, no fatigue and no malaise)); and (8) on examination on January 31, 2017, March 22, 2017, August 24, 2017, and November 13, 2017, other than noting no obvious swelling in the lower extremities, no fatigue or malaise, and that King was in no acute distress, Dr. Hunte's examination records contain no objective findings whatsoever relative to Plaintiff's extremities, joints, neck or back (*see* Tr. 417, 419, 451 & 453; *see also id.* (no mention of King walking with a cane)). The foregoing relatively mild (or non-existent) examination findings simply cannot be "squared" with the limitations (and pain comments) noted by Dr. Hunte on November 21, 2016, a date on which examination findings were identical to the four examinations from 2017 and the four initially relevant examinations

13

dated from November 2015 through March of 2016 when Hunte made no objective findings whatsoever relative to Plaintiff's extremities, joints, neck or back and simply noted King was in no acute distress, had no obvious swelling of the legs, no fatigue and no malaise (*compare* Tr. 421 *with* Tr. 370-76, 417, 419, 451 & 453 )). Indeed, given that the limitations (and pain comment) noted by Dr. Hunte on November 21, 2016, (Tr. 415-16) stand in stark contrast to the treating physician's relatively tame or non-existent objective examination findings (*see generally,* Tr. 364, 366-68, 370-76, 411, 413, 417, 419, 421, 451 & 453)—and the omission of any mention of Plaintiff walking with a cane (or that she needed to walk with a cane) on or after November 21, 2016 (*compare* Tr. 421 *with* Tr. 417, 419, 451 & 453)—[7] the Court finds that Dr. Hunte's medical source statements were properly eschewed (that is, accorded little weight) by the ALJ. *See Gilabert, supra,* 396 Fed.Appx. at 655.

In addition, the vast majority of the remaining medical evidence of record is consistent with Dr. Hunte's innocuous examination findings, as opposed to the opinions reflected on the treating physician's PCE (and pain comment), and likewise serve as a proper basis for the ALJ to accord less than controlling weight to the treating physician's medical source statements. For instance, the radiographic evidence is unremarkable or only reflects mild findings (*see* Tr. 408, 441 & 448), including some posterior calcaneal spurring near the Achilles insertion (on the left) but no fracture or dislocation (Tr. 442; *see also* Tr. 446 (bilateral posterior calcaneal spurs)). On August 24, 2016, office notes from Franklin Primary reveal some tenderness of the left Achilles tendon with mild swelling and

---

[7] The record reflects that Dr. Hunte made the observation that Plaintiff walked with a cane when appropriate. (*See* Tr. 411 ("Walking with cane.")).

decreased range of motion of the left ankle but, otherwise, that King was in no acute distress. (Tr. 403-05.) An examination conducted on September 9, 2016, contains a notation of Plaintiff's use of a cane and some left ankle swelling and pain, along with notation 10 out of 18 soft tissue tender points; however, there was no other extremity edema and neurological examination was grossly normal. (Tr. 399-401.) A rheumatology evaluation on October 14, 2016, detected some pain in the knees but no extremity edema and neurological exam was grossly normal; overall, the doctor's assessment was that Plaintiff's sarcoidosis was improving. (Tr. 435-38.) Another rheumatology evaluation on January 13, 2017 revealed only some 8 of 18 soft tissue tender points but no other positive objective examination findings; indeed, there was no extremity edema and a normal neurological examination. (Tr. 429-32.) An examination by Dr. James L. West on January 12, 2017, revealed some tenderness in the cervical and lumbar spine and a decreased range of motion but a normal neurological examination (Tr. 447) and an examination by Dr. Mark Perry on January 17, 2017, revealed bilateral Achilles tightness and tenderness over the mid-substance of the Achilles but there was no evidence of neuropathy and sensation was intact to light touch in all nerve distributions of the feet (Tr. 445). Finally, by September 13, 2017, the examination of Dr. Christopher Jones revealed that King was in no acute distress and presented with a normal gait, without assistive device, and a normal station. (Tr. 450.) The foregoing radiological and examination findings are consistent with the examination findings of Dr. Hunte (*compare* Tr. 399-401, 403-05, , 408, 429-32, 435-38, 441-42 & 445-48 *with* Tr. 364, 366-68, 370-76, 411, 413, 417, 419, 421, 451 & 453) and fully supportive of the RFC determination of the ALJ (*compare id. with* Tr. 15); as a consequence, these medical findings substantially support

the ALJ's decision to accord little weight to Dr. Hunte's medical source statements. *See Gilabert, supra,* 396 Fed.Appx. at 655.

With respect to one-time examiner Dr. Stephen Chromiak, the ALJ gave little weight to his August 19, 2016 findings of cervical spasm, loss of balance, decreased sensation, loss of motor strength due to pain, limitation to walking a few steps with a cane, etc., on the basis that those findings were "at variance with findings from other sources, including treating sources that were generated about the same time." (Tr. 19.) And, indeed, the undersigned agrees with the ALJ that Dr. Chromiak's findings are at odds with her treating physician's examination notes on August 16, 2016 (only three days before Dr. Chromiak's examination) that contain no objective findings relative to King's extremities, joints, neck or back (Tr. 413; *see also* Tr. 411 (September 29, 2016 examination by treating physician noted only diffuse tenderness in the upper back and legs); Tr. 417, 419, 421, 451 & 453 (examination notes from treating physician dated November 21, 2016, January 31, 2017, March 22, 2017, August 24, 2017, and November 13, 2017, contain no objective findings relative to King's extremities, joints, neck or back)) and, as well, cannot be squared with mild objective evidence produced by other examiners (*see, e.g.,* Tr. 403-05 (on August 24, 2016, office notes revealed some tenderness of the left Achilles tendon with mild swelling and decreased range of motion of the left ankle but, otherwise, the Plaintiff was noted to be in no acute distress); Tr. 399-401 (September 9, 2016 examination revealed only some left ankle swelling and pain but a grossly normal neurological examination, including normal sensation); Tr. 435-38 (on October 14, 2016, neurological examination was grossly normal); Tr. 429-32 (normal neurological examination on January 13, 2017); Tr. 447 (evaluation on January 12, 2017,

revealed some tenderness in the cervical and lumbar spine regions, with a decreased range of motion, but a normal neurological examination); & Tr. 445 (bilateral Achilles tightness and tenderness over the mid-substance of the Achilles noted on January 17, 2017, but there was no evidence of neuropathy and sensation was intact to light touch in all nerve distributions of the feet)). Indeed, no doctor in the record, other than one-time examiner Dr. Chromiak, ever noted muscle spasming, a loss of sensation, or the dragging of the left leg and restriction on walking, such that the one-time examiner's findings need be viewed as an aberration as opposed to a true depiction of King's physical condition.[8] That Dr. Chromiak's findings are an aberration is clear not only based on the minimal objective findings of Dr. Hunte on August 16, 2016 (Tr. 413) and the relatively mild objective findings of other examining physicians on August 24, 2016 and September 9, 2016 (Tr. 399-401 & 403-05) but, as well, the observation of clinical psychologist, Dr. John Davis, that when he evaluated Plaintiff on August 12, 2016, she walked with a cane, though it appeared "unused" and she presented with "no unusual gait or posture abnormalities." (Tr. 394.) Accordingly, the undersigned finds that the ALJ committed no reversible error with respect to her analysis of Dr. Chromiak's findings.

---

[8] Dr. Chromiak's statement that King "is so dependent for ADL's & IADL's that she *appears* unable to work in any capacity[,]" (Tr. 390 (emphasis supplied)) was correctly accorded no weight because of its inconclusiveness (by insertion of the vague word "appears"), because it is based principally on Plaintiff's subjective statements that she is dependent on others for ADL's and IADL's, and, most importantly, because it does not constitute a medical opinion. *Compare Kelly v. Commissioner of Social Sec.,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Symonds v. Astrue,* 448 Fed.Appx. 10, 13 (11th Cir. Oct. 31, 2011) ("[T]he ultimate issue of disability is left to the determination of the Commissioner; and a statement by a medical source that a claimant is 'disabled' or 'unable to work' is not binding on the ALJ.").

In light of the foregoing, the Court finds that good cause existed for the ALJ to afford little weight to the medical source statements completed by Dr. Hunte on November 21, 2016, *see Hunter v. Social Sec. Admin., Commissioner,* 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."), *cert. denied,* 136 S.Ct. 2487, 195 L.Ed.2d 823 (2016), as well as Dr. Chromiak's findings, *cf. Gilabert, supra,* 396 Fed.Appx. at 655 (recognizing that good cause exists to reject a treating physician's opinion/findings where the evidence supports a contrary finding). Finally, any suggestion by Plaintiff that the ALJ improperly "cherry-picked" from the medical evidence to develop an RFC assessment and, in doing so, improperly substituted her own opinion for that of Drs. Hunte and Chromiak, is belied by the record, a record which establishes good cause for the weight ("little") the ALJ assigned to Dr. Hunte's medical source statements and Dr. Chromiak's findings, while at the same time supplying substantial evidence to support the ALJ's RFC determination[9]. Stated somewhat differently, this

---

[9] This substantial support comes in the form of the mild, minimal and non-existent objective findings of King's treating physician and several other examining physicians contained in the medical record, as previously set forth herein and by the ALJ (*see* Tr. 16-19), which the ALJ linked to her sedentary work RFC assessment (*see* Tr. 19 ("Limitation to sedentary activity is based on the combination of impairments, giving the claimant the greatest possible benefit of the doubt, noting findings of tender points, slow gait, intermittent ankle swelling, and occasional muscle spasm, as well as Achilles tendinitis for which stretching by a rehabilitation specialist has been recommended.")).

"Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Indeed, "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10. Again, this Court finds that the minimal objective findings set forth in the
(Continued)

Court finds that "the ALJ did not 'play doctor' in assessing [Plaintiff's] RFC, but instead properly carried out h[er] regulatory role as an adjudicator responsible for assessing [Plaintiff's] RFC." *Castle v. Colvin,* 557 Fed.Appx. 849, 853 (11th Cir. Feb. 18, 2014) (citation omitted).

Given that King's overarching assignment of error is properly overruled and Plaintiff does not challenge the VE's identification of sedentary jobs an individual with the residual functional capacity reflected in the decision can perform (*compare* Doc. 13 *with* Tr. 15, 21-22 & 50-51), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden."

---

medical evidence of record provide substantial support for the ALJ's determination that King retains the residual functional capacity to perform sedentary work.

(internal citations omitted)). In short, substantial evidence supports the ALJ's determination that King is not disabled.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this 19th day of June, 2019.

s/P. Bradley Murray<br>
**UNITED STATES MAGISTRATE JUDGE**